DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

AT NOVEMBER TERM, 1859.

~~~~~~~~~~

JAMES M. QUIMBY ET AL. *vs.* ASA H. WATERS ET AL.

1. Ignorance of a penal statute is no excuse for its violation; the violation of the statute consists in doing the prohibited act, or in the refusal or omission to perform the required duty, and not in the intent and motive by which the party is actuated.

2. The nineteenth section of the act to authorize the establishment of manufacturing companies (*Nix. Dig.* 450) is in full force, and by it a certificate is required to be made after payment of the last instalment of the amount upon which business is commenced, and also upon payment of the last instalment of any increase thereof between the amount upon which business is commenced and the limit of the original certificate.

3. The 20th section requires a certificate to be made after the payment of the last instalment of the additional stock beyond the limit of the original certificate.

4. The liability created by the 30th section of the act extends to violations of the 19th section; and if a certificate made under the provisions of the latter section is false, the officers signing it are liable for the debts of the company contracted while they were stockholders or officers thereof.

---

In error to the Supreme Court, on motion in arrest of judgment in that court.

2 Y*

*F. T. Frelinghuysen* and *J. P. Bradley*, for plaintiffs in error.

*Hubbell* and *W. Pennington*, for defendants.

OGDEN, J.  The action was not commenced for the recovery of a debt due from the defendants below to the plaintiffs on promises, either express or implied, but it is founded upon the provisions of an act of the legislature authorizing the establishment and prescribing the duties of companies for manufacturing and other purposes, approved March 2d, 1849.  A number of persons in the city of Newark, on the 15th of July, 1853, associated themselves together into a company under that statute for the manufacturing and sale of firearms, assuming the business name of "the Perry Patent Arm Company."  The plaintiffs below became the holders of two bills of exchange, dated the 17th of February, 1854, accepted by the company.

The paper was dishonored at maturity, and on the 16th of September, 1854, the plaintiffs prosecuted the company upon their acceptances in the Circuit Court of the county of Essex.  On the 27th of April, 1855, they recovered judgment for the sum of $3009.16 damages, and $47.49 costs, which judgment remained unsatisfied when the present suit was commenced in the Supreme Court in the term of November, 1856.

The plaintiffs insist that the defendants have become personally liable to pay to them this debt of the company, because, as stockholders in and officers of the company, they violated the law under which they had organized, and by its provisions thereby became subject to an action for the recovery of the debt.

The question before the court is, whether the declaration, on its face, sets out a good cause of action against the defendants below.  It states the passage of the act— the organization of the company under it—the recording of the original certificates, whereby they made known

the total amount of the capital stock and also the amount of capital stock on which they would commence business —the fact that the defendants were stockholders in and officers of the company when the acceptances were made, and the prosecution of the original suit against the company to judgment. It then states that Quimby, as president and director of the company, Hartshorne, as secretary and treasurer thereof, and Meeker, Price, Perry, and Gibney, a majority of the directors thereof, on the 9th of January, 1855, within thirty days after the payment of the last instalment of the capital stock fixed upon as the amount of capital stock of the said company, with which they would commence business, did make a certificate, and did sign and swear to the same, and within the said thirty days did record the certificate in the clerk's office of the county, and did also publish the same, as required by the act of the legislature, by which certificate they did make known, under oath, that the whole amount fixed upon by the company in their original certificate of incorporation as the capital on which they would commence business, the same being $288,000, had been paid into the treasury of the company in cash, the last payment thereof having been made on the 29th of December, 1854.

It is then averred in the declaration, that the capital stock of $288,000, so fixed upon as stated in the certificate, was not paid into the treasury of the company in cash, as in the certificate and publication thereof is made known, and as is required by the act under which the company was incorporated, and that the certificate and notice were false and untrue in the said material representation; and it is then averred that, by means thereof, the said persons, as stockholders and officers of the company, became liable to pay to the plaintiffs the said debt of the company, and that thereby an action had accrued to the plaintiffs to have the said money of the defendants, according to the form, force, and effect of the act.

Whether the judgment shall be arrested or not must depend upon the fact, whether there is any section in the act referred to which can make the defendants liable for the general debts of the company, on the ground that the certificate and publication signed and made by them, set out in the declaration, were false in any material representation.

Two matters must be kept in mind as we pursue this inquiry.

*First.* Whether, according to the scope and obvious design of the act, a certificate and notice of the nature and purport of that stated in the declaration is required to be made.

*Second.* Whether, if they be false, that fact creates a personal responsibility upon the parties thereto.

It is provided in terms, by the 19th section of the act, that the president and directors, with the secretary and treasurer of each company, shall within thirty days after the payment of the last instalment of the capital stock so fixed and limited by the company, make a certificate stating the amount of the capital so fixed and paid in cash, which certificate shall be signed and verified by the president, secretary and treasurer, and a majority of the directors; and it further directs that the same, within the said thirty days, shall be recorded in a book provided for in the section, and also shall be published by them for three weeks in a newspaper.

The 20th section requires, in case of an increase of the capital as provided in the act, that the same officers, within thirty days of the payment of the last instalment of such additional stock, shall make, sign, and swear to a certificate of the amount so added and paid in in cash, and shall cause the same to be recorded and published in the manner provided in the 19th section.

By comparing the certificate set out in the declaration with the requirements of the 19th section, it is apparent that the defendants, in making their certificate, designed

literally to comply with that section; and it cannot be gravely insisted that such certificate and notice were voluntary acts of supererogation and were not made in pursuance of the statute. What motive could have induced the defendants to take that trouble, if they were not seeking to fulfil the conditions upon which their company was authorized to commence and continue their business?

It was suggested, on the argument, that the certificate was made under a misapprehension of liability and of duty; that by the act of 1846, the *stockholders* of such companies were held personally liable for all contracts and debts of the company to which they belonged, until the amount of the capital, from time to time limited and fixed, should be paid in, and a certificate thereof should be made, recorded, and published in the manner already stated; and it was alleged that this certificate was made by the officers under a supposition that the law of 1846 had not been altered in that particular, although in point of fact no such obligation then rested on the officers.

In regard even to penal laws, it is strictly true that ignorance is no excuse for the violation of a statute containing peremptory words and imposing a penalty. If the prohibited act be done, or the act directed be omitted, the penalty must be paid.

The offence against the statute consists in the wilful violation of its provisions, as a refusal or omission to perform the duty required by it, and not in the intent and motive by which the party is actuated.

It is true that, in the act of 1849, which superseded and repealed the act of 1846, the section is omitted which continue the personal liability of the stockholders until the amount of the capital stock, from time to time fixed and limited by the company in the manner provided in the act, should be paid in, and a certificate thereof be made and recorded and published; yet, nevertheless, the 19th section of the present act requires that, within thirty days after the payment of the last instalment of the capital stock so fixed

and limited by the company, a certificate shall be made, under oath, stating the amount of the capital so fixed and paid in in cash, and that the same shall be recorded and published.

But it was further objected against the alleged liability of the defendants, that the time for making the certificate had not arrived, because only $288,000 of the capital appeared by the certificate to have been paid in, whereas the total amount of the capital is $300,000.    This objection is satisfactorily met and answered by examining the 14th and 20th sections.

My interpretation of the whole statute is this, that the legislature made three distinct descriptions of capital stock.

*First*, the amount of capital stock with which the companies should certify that they would commence business ; *second*, the amount of capital stock between that sum and the limit named in their original certificate ; and, *third*, the amount of capital stock which might be added by a supplemental certificate.   It is provided in the 14th section —first, that a company (meaning the stockholders), at a meeting called for that purpose, may *increase* its capital stock, and the number of shares therein, until it shall reach the amount named in the original certificate ; and second, in case more capital is necessary, that an additional certificate, under the hands of at least two-thirds of the stockholders, shall be filed stating the amount of such additional capital required.

The 20th section requires that if additional stock be made, the officers mentioned in the 19th section shall file a sworn certificate within thirty days after the payment of the last instalment of such additional stock.    It is clear to my mind that, by the 19th section, certificates are required to be made from time to time, after the payments of the last instalment of the stock fixed as that on which business would be commenced, and of also the last instalment of the increase thereof between that amount and the

limit of the original certificate ; and that a certificate is required, by the 20th section, to be made after the payment of the last instalment of the additional stock beyond the limit of the original certificate. This view is in accordance with the scope and object of the act, and will provide, from time to time, to the dealers with companies such information as is necessary and proper for their security. The spirit of the statute is, that enterprising men should be able to conduct a business by their congregated capital without incurring risks beyond the loss of the amounts which they respectively invest, and that the public who deal with them may be protected against losses by the formation of companies without the investment of real cash capital.

In my opinion the certificate and notice which underlie this case, made and given by the defendants, cannot be held to have been voluntary acts not made in pursuance of the provisions of the statute ; but they should be adjudged to have resulted from the requirements of the 19th section, and to have been recorded and published as being a literal performance of the impositions of that section when the last instalment of the $288,000 purported to have been paid in.

As the declaration avers that the certificate and public notice are false and untrue in a material representation, and the jury have so found the fact to be, the only remaining inquiry is, whether the statute has made the defendants personally liable for the debt due from the company to the plaintiffs. The 21st section of the act under examination enacts, that if any of the officers named in the two preceding sections shall neglect or refuse to perform the *duties* required of them in those sections, or the certificate made by them shall be untrue, they shall be liable for all debts of the company contracted after the expiration of the said thirty days, and before the certificate shall be recorded as required.

The defendants have urged that they can be liable for

default to and falsities touching the matters set out in the 19th and 20th sections only through the provisions of the 21st section; and as that section creates no personal liability for debts of the company, excepting for such as might be contracted after the expiration of the thirty days, and before the certificate should have been actually recorded, therefore that no such liability has been fastened upon them by the pleading. They undoubtedly are right if their liability to this action arises from the provisions of this 21st section. That particular section is not referred to in the declaration, and hence we are not thereby confined to it in this inquiry.

The plaintiffs do not pretend to hold the defendants personally on that section. They admit that it does not reach their case, but they insist that their action is maintainable upon the liability created in the 30th section of the act. That section is in the following words: "If any certificate made, or any public notice given by the officers of any company in pursuance of the provisions of this act shall be false in any material representation, all the officers who shall have signed the same shall be jointly and severally liable for all the debts of the company contracted while they were stockholders or officers thereof."

Assuming that the 19th section provides for making a public certificate of such facts as purport to be made known to the community by the certificate of the defendants, there could be no semblance of doubt upon the applicability of the 30th section to the 19th section, if the 21st section was not in the present act. The subject matter of the certificate is the same as is contemplated in the 20th section, and the words of the section are broad enough to embrace the case.

What efficacy shall be given to the 21st section? Should we hold it as withdrawing from the liabilities created by the general language of the 30th section failures in fulfilling the requirements of the 19th and 20th sections, or

would we construe it as only giving a cumulative additional remedy to the extent that its language imports?

If we determine that it wholly appropriates the 19th and 20th sections to itself, and creates an immunity against all *wilful* violations of the requirements of those sections, except a liability to pay such debts as may be contracted within the period thereby limited, the most valuable purpose originally intended to be effected by the 30th section will be defeated, and its protective and salutary restraints will necessarily be applicable to a very few and comparatively minor violations of required duty. Under such a construction of the statute, a failure by the president and majority of the directors to make, under oath, an annual statement of the affairs of the company under the provisions of the 24th section will leave *them* personally liable for the payment of *all* debts then existing, while the same persons, for making under oath a false statement of the payment in of their capital, will only be personally answerable for such debts as may be created within a limited period, which may not extend beyond two or three days.

The insistment that this certificate, and the publication thereof, formed no part of the basis of the credit on which the acceptances were negotiated loses its apparent force upon a careful reference to dates. The papers were protested in July and August, 1854. The original certificate of incorporation, made under the hands and seals of the corporators, who are among the most wealthy and respectable citizens of Newark, had been filed within seven months of the date of the drafts, which certificate showed the amount of their whole capital stock and the amount of capital stock on which they would commence their business.

The action was commenced against the company in September; the certificate of the final payment of $288,000 in cash was filed in December following, and the suit was continued until the 27th of September, 1855. How can we assume that the record of a certificate, veri-

fied by such gentleman as these defendants are well known to be in that community, had no influence upon the plaintiffs while prosecuting their action to judgment, and that it did not prevent an advantageous composition of their debt? What information could have given them better assurance that they would be able. eventually to realize their debt than a certificate, thus verified, that $288,000 had been paid in in cash within the period of eighteen months?

The argument upon the hardness of this suit which was thus incidentally made, is without foundation.

By extending the liability created in the 30th section to violations of the 19th section, we do not override any settled principle and rules for the construction of statutes, nor do we necessarily encourage two concurrent actions for the same default.

The books are full of cases showing that statutory and common law remedies exist for the same unlawful acts, yet it does not follow that two recoveries may be had for the same cause of action.

In the case of *Churchill* v. *Crease*, in 5 *Bingham*, 180, which was cited by the counsel for the defendants with great confidence, the case was stated by Ch. Just. Best to be, that where a general intention is expressed, and the act expresses also a particular intention *incompatible* with the general intention, the particular intention is to be considered in the nature of an exception. There is no incompatibility between the intention expressed in the 21st section of this statute and that expressed in the 30th section. The purpose of each is the prevention of fraud and provision for a true certificate. Also, in *Sedgwick* 423, where general words follow particular words, the rule is to construe the former as applicable to the things or persons particularly mentioned. For this is cited *Sandiman* v. *Breach*, 7 *Barn. & Cres.* 100.

*Divarris* 658. If words are found in a particular clause of a statute not so large or extensive as those used in

other parts of the act, it is the duty of courts to give effect t> the larger expressions.

I am of opinion that the judgment of the Supreme Court should be appraised with costs. By so doing we shall observe that leading rule of construction, that a statute ought, upon the whole, be so construed that, if it can be prevented, no clause, sentence, or word should be superfluous, void, or insignificant. 1 *Showers* 108.

VAN DYKE, J. (dissenting). This is a motion in arrest of judgment, and the only matter we have to look at is the plaintiffs' declaration, to see whether it contains enough on its face, everything thereon being admitted to be true, to justify a recovery. We have nothing whatever to do with the trial below, nor with the way in which the defendants transacted their business, nor with the verdict of the jury, nor with the evidence before them, nor with the motion to set that verdict aside. All these things are foreign to our present inquiry. With the declaration above, and the law of the land applicable to it, we have now to do. If this declaration does not disclose enough upon its face to warrant a recovery, then this judgment should be arrested, if it does, then this motion should be refused.

The question is not whether a declaration *might* have been framed that would have been sufficient under the law and facts, but whether it *has* been so framed.

It was suggested, on the argument, that the defects, if any, should have been taken advantage of by demurrer. It is true that the defendants might have done so, but they were under no obligation to do so. They have the same right precisely to take this course that they had to take the other.

Considerable reference has been made to the act of 1846. This may be well enough as a matter of history, but it cannot afford us any legal aid in the present inquiry. That act was wholly repealed by the act of 1849, and is as though

it had never existed. All the proceedings of this company have been under the latter act. No practice prevails under the former act, nor were any adjudications made upon it which can enlighten us as to the construction of the present one. This action, therefore, must be wholly sustained by the act of 1849 or not at all.

This suit partakes of all the essential features of an action brought to recover a penalty, and should be governed by the rules applicable tô such suits. It is not insisted that the defendants, or either of them, ever directly or indirectly promised to pay this claim, nor is it pretended that it is their individual debt. The suit is brought against them for having made and recorded, as is alleged, a false certificate concerning the capital paid in; but as this was done long after this indebtedness accrued, it cannot be contended that the debt was in any measure contracted on the faith of that certificate, or that, in becoming the creditors of this company, the plaintiffs, to any extent, gave credit to these individual defendants in consequence of such certificates, nor can it be said that these plaintiffs have in any manner been either deceived, misled, or wronged thereby. If, then, these defendants are liable at all in this suit, it is because they have incurred a penalty or forfeiture which the plaintiffs are striving to enforce without any other meritorious considerations between them. The law therefore, as to them, must be construed strictly, and before they are permitted to recover it should be very clear that the penalty has been incurred, and that they are in a condition to enforce it. By the first section of the act under which these proceedings take place, persons associating themselves together for corporation purposes are required to make and file in the office of the clerk of the county a certificate, setting forth, among other things, the total amount of the capital stock of such company, the amount with which they will commence business, and the number of shares into which the same is divided.

By the 19th section it is provided, that the president and directors, with the secretary and treasurer of each company, within thirty days after the payment of the last instalment of the capital stock so fixed and limited by the company, shall make a certificate stating the amount of the capital so fixed and limited *and paid in in cash*, which certificate shall be signed and sworn to by the president, secretary, and treasurer, and a majority of the directors, and within the said thirty days be recorded and published.

By the 20th section it is provided, that if the company shall increase its capital stock, as is provided for, the said officers, within thirty days after the payment of the last instalment of such additional stock, shall make and swear to another certificate of the amount so added and paid in in cash, and cause the same to be recorded and published as in the other case.

And the 21st section declares, that if any of the said officers shall neglect or refuse to perform the duties required of them in the two preceding sections, or the certificates made by them shall be untrue, they shall be jointly and severally liable for all the debts of the company contracted after the expiration of the said thirty days and before such certificate shall be recorded as aforesaid.

Now this declaration states that the said associates did file the certificate contemplated in the first section, and that it was in all things in compliance with the requirements of the act, and that it set forth, among other things, that the amount of their capital stock was $300,000, divided into 3000 shares of $100 each, and that they would commence business with a capital of $288,000, divided into 2880 shares of $100 each. It further states, that afterward, on the 17th day of February, 1854, the said company became indebted to the said plaintiffs in the sum of $2812.73, which amount, not being paid, was prosecuted to judgment. The declaration further states, that on the

2 z*

9th day of January, 1855, these defendants, being the secretary, president, and treasurer, and a majority of the directors of said company, did within thirty days, after the payment of the last instalment of the capital stock so fixed upon as the amount with which they would commence business, make a certificate, sign and swear to the same, and within the said thirty days, record the same in a book, &c., and cause the same to be published as by the act is required, by which certificate the defendants did certify and make known that the amount of capital stock, with which by the original certificate of incorporation it was declared that the said company would commence business, was $288,000, divided into 2880 shares of $100 each, and that the whole of such amount had been paid into the treasury of the said company in cash, the last payment whereof had been made on the 29th of December, 1854. The declaration then avers that the said sum of $288,000, so fixed and stated in the said certificate, was not paid into the treasury of the company in cash, and that the said certificate and the notice given of the same were false and untrue in the said material representations thereof, by means whereof the said defendants, as officers and directors of the said company, became liable to pay to the plaintiffs the said debt due to them from the said company

These are the material facts contained in the declaration; and the first question which presents itself is, do these facts show that the defendants have become liable to pay this debt of the company in consequence of anything contained in the 21st section of the act, which has direct reference to the certificate alleged to be false? Beyond all question the defendants have not become liable by virtue of any provision of the 21st section, for that section only makes them liable, in any event, for debts contracted after the making of such certificate, whereas the declaration shows that the debt in question was con tracted long before such certificate was made. The Su-

preme Court so declares it, and I do not understand the counsel to dispute it.

The next inquiry then is, is there any other section or provision of the act which renders the defendants liable in consequence of this false certificate, admitting it to be false. The plaintiffs insist that the 30th section makes the defendants liable for this and all other debts of the company contracted while they were either officers or stockholders of the company, in consequence of the falsity of the certificate and notice required by the 19th section.

This proposition, in my opinion, involves considerations of a very grave and serious nature, for, in looking at the previous sections of the act, we find that they make provision for five different certificates and nine different notices ; and if the position of the plaintiffs be correct, then if in making any one of these certificates, or giving any one of these notices, any one of them is in fact false in any material representation, the officers who signed it become responsible for all the debts of the company contracted while they were·either officers or stockholders, no matter whether those debts are $3000 or $300,000, no matter whether these certificates or notices are important to the creditors or not, and no matter whether the errors are matters of blunder or design.  Stockholders, who have simply been such from the beginning for a dozen years or more, and afterwards accept office in the company, and sign one certificate or notice which turns out to be untrue, are made personally liable for all the previous debts of the company and for all subsequent ones, also, contracted while they remain mere stockholders, although they had long before ceased to be officers.

Can it be possible that we are forced to give the act such a construction ?    And yet this is the inevitable result to which we are forced if we decide that the plaintiffs in this writ can recover under the 30th section for the reason set forth in the declaration, for the 30th section makes no

distinction between such certificates or notices as are wilfully and corruptly false and such as are simply false, for no one here pretends that these defendants have wilfully done anything wrong, and no distinction is made between one kind of certificate or notice and another, but it says *any* certificate or *any* notice made in pursuance of the said act.

Certainly we ought to be well satisfied, before we make a decision so sweeping and terrible in its possible effects, that the law sternly demands it at our hands ; and although this law, which upon a critical examination of its sections seems in many respects very remarkable, if not absurd, may in certain of its aspects be entitled to a liberal construction, yet viewing this suit as highly penal in its character, and bound to a strict construction, let us see what are the obstacles to the plaintiffs' recovery under the 30th section.

*First.* It is insisted, by the defendants, that the certificate alleged to be false has a special and distinct penalty or official liability of its own attached to it, and bearing directly upon it, in the 21st section, and that the penalty incurred, or the misconduct complained of, must be reached through the provisions of that section, or' not at all. It is undoubtedly true, when a single section of an act prescribes a duty or prohibits an act, and adds a special penalty for a violation, and several other sections prescribe other duties or prohibit other acts equally important without any special penalties annexed, and the act afterwards has a section embodying a general penalty, which seems to apply to all the sections alike, and is equally severe upon each, accompanied by no explanatory language, it cannot be considered that the one section has a double penalty annexed to its violation, and each of the others has but a single one ; on the contrary, it must be understood that each offence has its own punishment, and that those offences which have no special penalty attached will all be punished alike under the general sec-

tion, while the offence which has a special penalty attached will be punished according to that special penalty alone; and as the offences having the general penalty attached could only be reached or punished by the violation of some one or more of such sections, so the offence provided against in the section containing the special penalty cannot be reached or punished, except in the manner provided in the section containing that special penalty. If it were otherwise, then the person violating the section having the special penalty *might* be punished twice over, and in two different ways for the same offence. This could not be tolerated, except where the language expressly required or authorized it. And in the present case, if this debt had accrued *after* the expiration of the thirty days and before recording the certificate, if the plaintiffs are right in their position, they might have had three suits pending at the same time for this same debt, one against the company, one on the 21st section, and one on the 30th section. The legislature, by the 31st section, evidently meant to give a creditor a privilege of putting all his remedies *at law* in operation at the same time until he recovers his claim; and yet, to show that the legislature never contemplated the possibility of such a state of things, they have limited the actions to two, one against the company, and the other against the officers, on the appropriate penalty, not on both; and although the act gives a remedy against the individual members in chancery, yet it prohibits the use of both, and gives the chancery remedy *instead* of the other proceedings, if the creditor prefers it; but in giving this election, the legislature has used plain language, and has not left it to a possible inference; or, if the construction of the plaintiffs be correct, we might see another anomaly in legal proceedings, one creditor prosecuting the defendants under the 21st section, and another prosecuting them, at the same time, under the 30th section for the same offence, not for the same claim, but for the same offence, and that,

too, when both claims accrue on the same days and under precisely the same circumstances! Could the legislature have intended this?

It said, however, in avoidance of the rule contended for and the authority cited that it only applies where there is an *incompatibility* between the special section and the general one. By this I understand it to be admitted, that if there be an incompatibility between the two sections, the special one must prevail, and the general one be excluded. Now what constitutes an incompatibility between two sections? I cannot imagine a greater one than that the punishment attached to one section is wholly different from that of the other.

Suppose the first section of an act declares, in proper terms, that no person should commit the crime of larceny, and if he should, and should be thereof convicted, he should be punished by a fine of $100; the second section declares that no person shall commit the crime of robbery, the third section declares that burglary is unlawful, the fourth makes it a crime to commit forgery, and the fifth declares the same thing about arson, neither of the sections or offences having any penalty or punishment attached to them except the first; but the next section declares, that if any person shall be guilty of any of the offences mentioned in the previous sections of the act, and shall be thereof convicted, he shall be punished by a fine of $1000. Now can it be gravely contended that if a person should become guilty of larceny, the prosecution under the first section might be waived, and the one under the general provision of the last section substituted? Or could it be contended that a prosecution under the last section, for the offence mentioned in the first, could be lawfully had under any circumstances? And why not? Simply because the provisions of the last section are incompatible with those of the first; the first, therefore, forms an exception to the general provision for punishment in the last section, and must be governed by its own provision. But *in*

*what way* are the two sections incompatible with each other? It cannot be because the different crimes mentioned are not all felonies, nor because they cannot all be prosecuted in the same way and in the same tribunal, nor is it because the language in the last section does not in its terms apply to all the sections alike, but it is simply because the *punishment* in the two sections is wholly different. We could not pass by the provisions of the first section, where the penalty is $100 for its violation, and betake ourselves to the provision of the last section, where the punishment is $1,000. And herein precisely is the incompatibility between the two provisions in the act before us. The punishment in the two cases is wholly different, and this makes them incompatible. The 21st section makes the defendants liable for a certain class of debts only. The 30th section makes them liable for all the debts of the company contracted while the defendants were stockholders, which may make the punishment ten times as heavy as it would be under the 21st section; consequently the plaintiffs cannot abandon the 21st section, which expressly fixes the penalty for a violation of the 19th section, and betake themselves to the 30th section, and thereby seek to make the penalty for the violation of the 19th section ten times as heavy as the one expressly provided for it in the 21st section. The two things are wholly incompatible, and this being the case, it is not the right of a plaintiff to make his election between the two. The special penalty is alone applicable to the case; and if this does not turn out to be sufficiently severe it is the fault of the law, but it is a fault which the plaintiffs cannot remedy by bringing their action under a section which cannot be made to apply to the case.

In the act under consideration, with five certificates and nine notices provided for, we have three special penalties or liabilities created which relate to these certificates and notices, one applicable to the certificate in question, and the one to be used when the capital stock is

*increased.* One applies to the certificate to be made when the capital stock is *reduced,* the other relates to the notice to be given annually of the affairs of the company, leaving several other notices and certificates prescribed and acts prohibited to which the 30th section only can have application. I think, therefore, that these different provisions bring the case before us within the principles before laid down, and which force us to the conclusion that the duties prescribed in the 19th section have their own peculiar penalty for their violation provided in the 21st section, and when that penalty has been incurred, its own special punishment must follow, and that only.

Again, it is insisted, by the defendants, that the contingency or occurrence upon which these defendants can be made personally liable does not appear, from the declaration, to have happened. The charge is, that within thirty days after the payment of the last instalment of the sum of $288,000, the amount of stock on which the company were to commence business, the defendants made a certificate, &c., that the whole of that amount had been paid in in cash, whereas it is charged that such sum had *not* then been paid in in cash, and that the certificate was false in this particular ; but the defendants contend that the statute does not contemplate or prescribe any such certificate to be used at that stage of the proceedings, and that as a consequence whether such certificate was made or not, or whether it was true or false, is a matter of no importance ; that the defendants cannot be made liable on a mere voluntary certificate which the statute has neither provided for nor authorized, but which, through mistake or over caution, they may have used. This is undoubtedly true, if the facts be as contended for by the defendants. Hence the important inquiry on this part of the case is, what kind of a certificate does the law require. It is conceded, by both sides, that the certificate contemplated is the one prescribed in the 19th section of the act, and the question is, what kind of a certificate

does that section contemplate and require ? Is it a certificate to be made after the whole of the $300,000 has been paid in in cash, or is it one to be made after the whole of the $288,000 has been paid in in cash ? If the section requires the certificate to apply to the latter sum, then it has been made. pursuant to the statute, and if false it makes the defendants liable to such penalty as is applicable to it. If the section requires the certificate to apply to the former sum of $300,000, then this certificate in controversy has *not* been made pursuant to the statute, is not a certificate which the law requires or provides for ; and whether the defendants made and recorded it intelligently or ignorantly, whether they did it deceitfully or honestly, is of no importance. It is a mere nullity, and as worthless for any purpose as so much blank paper ; no proceeding can be based upon it. Which kind of certificate, then, does the 19th section contemplate and require ? The language of the section is, that the officers, within thirty days after the payment of the last instalment of the capital stock so fixed and limited by the company, shall make a certificate, &c., stating the amount so fixed and paid in, &c. It says the last instalment of the "*capital stock*." What is the capital stock of the company ? The declaration tells us that the company, by their original certificate of association, made known that their capital stock was $300,000, No other sum can be considered the capital stock. Surely the sum on which a company determines to commence business cannot be considered the capital stock of the company, when it may not be the fourth of it. The section says, in express terms, the capital stock "*so fixed*" and "*limited*" by the company. What capital stock was fixed and limited by the company ? None that I can ascertain, except the total sum of $300,000. This amount was fixed and limited by their original certificate, not by the officers, but by the stockholders themselves, when they signed the certificate of incorporation, and cannot be altered without a new vote

of the stockholders and a new certificate to be recorded and published. While the other sum of $288,000, divided into 2880 shares of $100 each, was neither *fixed* nor *limited*, nor intended to be, but was intended to be changed from time to time at the will of the company, without either certificate or record or notice, both in the amount and in the number of shares, until it should reach the maximum of $300,000 and 3000 shares so *fixed* and *limited* by the company in their articles of association.

The same thing is required when an increase of the capital stock is made, as provided in the section immediately following. The certificate in that case is not to be made and recorded until within thirty days after the last instalment of the *entire additional* stock has been paid in in cash. These two sections, the 19th and 20th, are almost if not quite identical in their features and provisions, each makes provision for a certificate to be made and recorded of the paying in of the last instalment of the capital stock, the one to be made after the last instalment of the original stock has been paid in, and the other after the last instalment of the additional stock has been paid in, and both are classed together, and made subject to the same special penalty or liability in the section immediately following them.

I can arrive at no other conclusion, therefore, than that the certificate mentioned in the 19th section is one that is not to be made until after the whole capital stock fixed and limited in the original certificate has been paid in. The certificate before us is not such a certificate, nor can I find any authority in law for such a certificate as this one alleged to be false. Consequently it is merely voluntary, made under a misapprehension of duty, and is the same as if it had never been made.

It is no answer to this view of the case to say that, by such construction, the company would never be under any necessity of making the certificate; that all they would have to do would be to omit paying in the last instalment, and the time would never arrive for making the

certificate ; for while this is all very true, the objection applies with exactly the same force to the other view of the case, for if the certificate is to apply to the amount with which the company determines to commence business, that is $288,000, all they have to do is to omit paying in the last instalment of that amount, and the time will never arrive when the making of such certificate will become a necessity. The law does not render necessary the actual paying in, before the company begins business, of the whole amount of capital with which the company determines to commence. Provision is made for calling it in by instalments. There is no limit to the smallness of the amount with which a company can commence business, except that found in the third clause of the first section, which is $6000. And the company, in the present case, was in operation long before the last instalment of $288,000 was alleged to have been paid in, for the debt' in the case before us was contracted nearly a year before such payment.

If, indeed, this certificate, worthless and mistaken as it is, had in fact deceived or misled the plaintiffs ; if they had or could, to any extent or in any manner, have given credit to the company on the faith of this certificate, and lost their money thereby, I should have felt myself obliged to seek for a more liberal construction of the law. For this is, after all, the whole object and end and aim of these personal liability sections, to give a remedy to those who have been deceived and defrauded and wronged by these false certificates and affidavits of the officers ; but I do not see how, with the most liberal construction, I could have reached a different conclusion.

I think, therefore, that there is no sufficient cause of action disclosed in this declaration, and that judgment in the case should be arrested.

*For affirmance*—Judges HAINES, OGDEN, RISLEY SWAIN and WOOD.

*For reversal*—Judges VAN DYKE, COMBS and VALENTINE.